EXHIBIT X

## IN ARBITRATION BEFORE FINRA DISPUTE RESOLUTION, INC.

### CASE NO.

FREDERICK BLAKE,

     Claimant,

v.

LEGEND SECURITIES, INC., BRIAN KEITH DECKER,
DAREN DORVAL, ANTHONY FUSCO, FRANK FUSCO,
STEVEN JOHN MEYER AND BERNARDO MISSERI,

     Respondents.

_____/

### STATEMENT OF CLAIM

     Frederick Blake, by and through his undersigned counsel, brings this arbitration claim against Respondents, Legend Securities, Inc. ("Legend"), Brian Keith Decker, Daren Dorval, Anthony Fusco, Frank Fusco, Steven John Meyer and Bernardo Misseri (collectively, the "Respondents") and alleges as follows:

     1.    This case is about Respondents continuing their long-running pattern of violating virtually every customer-related regulation which FINRA and the United States Securities and Exchange Commission (the "SEC") requires them to follow. Simply put, Respondents have a vast and sordid history of allowing their greed to obliterate their duty to treat their customers in a just, equitable and fair manner.

2.     Unfortunately for Mr. Blake, Respondents have not learned their lesson despite being repeatedly being fined and censured by FINRA and the SEC for their egregious wrongdoing to line their own pockets at the direct expense of their customers.[1]

3.     Respondents' blatant violations of FINRA and SEC rules caused Mr. Blake to lose virtually of his hard earned money which he entrusted to Respondents.  Respondents should be required to reimburse Mr. Blake for all of the money he lost during the short time his accounts were open.

4.     In addition, Respondents should be assessed punitive damages in an amount sufficient to punish them so that they finally will be deterred from again engaging in their egregious pattern of blatantly ignoring their duty to treat their customers in a just, equitable and fair manner so that they line their own pockets with unearned and ill-gotten gains at the direct expense of Mr. Blake (and many of Respondents' previous customers).

**The Vast Majority of Mr. Blake's Losses are Subject to the Strict Liability Standard**

5.     Although all of Mr. Blake's losses were caused by Respondents' greed and blatantly ignoring Mr. Blake's best interests to line their own pockets with unearned and ill-gotten gains, Mr. Blake is not required to prove that Respondents' wrongdoing caused the vast majority of his losses.

---

[1] FINRA's BrokerCheck reveals a disturbing pattern of wrongdoing which has resulted in numerous customer complaints and fines/censures levied by regulators against Legend, its principals and agents as a result of:  (1) excessive trading, (2) excessive commissions, (3) unauthorized trading, (4) failure to follow instructions, (5) knowingly employing unregistered associated persons and (6) committing fraud in connection with an SEC investigation.

In addition, many of the Respondents have worked for same firms which have been expelled by FINRA and some of them have had their licenses denied and/or suspended by FINRA and/or state securities regulators.

6.      In other words, the vast majority of Mr. Blake's losses are subject to the strict

liability standard. The strict liability standard means that Respondents automatically liable for

Mr. Blake's losses, and he is not be required to prove that Respondents committed fraud or

otherwise caused Mr. Blake to lose the vast majority of the money he entrusted to

Respondents to manage.

7.      Pursuant to Fla. Stat. § 517.12(1), a broker is required to be registered in

Florida before he or she recommends a securities transaction to a Florida resident. Mr. Blake

is now and was a Florida resident during the relevant time period.

8.      Respondents Misseri and Decker recommended the vast majority of the

transactions which caused Mr. Blake's losses. As such, they were required to be registered in

Florida before making any recommendations to Mr. Blake.

9.      FINRA's BrokerCheck shows that Respondents Misseri and Decker were not

registered in Florida when they recommended to Mr. Blake the transactions which caused the

vast majority of Mr. Blake's losses. As such, pursuant to Fla. Stat. §§ 517.211(1)(4)(5),

Respondents Legend, Misseri and Decker are required to repay Mr. Blake for the losses

incurred on the transactions recommended by Misseri and Decker, plus interest from the time

of the transactions, for no other reason that they were not registered in Florida (even assuming

that they did not commit wrongdoing in making these recommendations which, as discussed

below, is nothing more than an assumption).[2]

---

[2] Legend and its principals are also strictly liable because they failed to require Misseri and Decker to register in Florida. Unfortunately, this is not surprising in light of the fact that some of Legend's principals have been fined and censured for "knowingly employing unregistered associated persons."

3

10.     In addition, as a result of violating Fla. Stat. § 517.12(1), Respondents Legend,

Misseri and Decker are required to pay all of the costs and attorneys' fees incurred by Mr.

Blake in bringing this Claim pursuant to Fla. Stat. § 517.211(6).[3]

**In Addition to Being Automatically Liable for the Vast Majority of Mr. Blake's Losses
All Respondents are Liable for All of the Losses He Incurred because they Defrauded
Mr. Blake Just as they Have Defrauded Many of the their Customers**

11.     In addition to being automatically/strictly liable to Mr. Blake for most of the

transactions at issue on the basis that Messrs. Misseri and Decker were not registered in

Florida, they and all of the remaining Respondents caused all of Mr. Blake's losses as a result

of:  (a) making false statements of material fact; (b) unauthorized trading; (c) failing to follow

instructions; (d) overconcentration; (e) churning; (f) charging exorbitant commissions; (g)

stock manipulation; (h) improper use of margin; and (i) negligent supervision.[4]

12.     These egregiously fraudulent actions by Respondents violated Fla. Stat. §

517.30l(1)(a).  As such, pursuant to Florida § 517.211(2), all Respondents are liable for all of

Mr. Blake's losses.

13.     In addition, as a result of violating Fla. Stat. § 517.30l(1)(a), all Respondents

are required to pay all of the costs and attorneys' fees incurred by Mr. Blake in bringing this

---

[3] Mr. Blake does <u>not</u> request the Arbitration Panel award attorneys' fees or costs under section 517.211(6), Florida Statutes.  Rather, he seeks a finding that Respondents violated various sections of the relevant Florida Statute (which entitles him to attorneys' fees and costs). *See also* note 7, *infra*.

[4] In addition to conclusively showing that Mr. Misseri and Mr. Decker were not registered in Florida during the relevant time period, FINRA's BrokerCheck also reveals that Respondents have repeatedly committed similar types of fraud with respect to many of their other customers. *See* notes 1 and 2, *supra*.  In addition, some of the Respondents have been found to have "knowingly employing unregistered associated persons" and lying to the SEC during an investigation, resulting in fines, censures and suspensions.  Respondents' previous pattern of the type of fraud found in this case shows that Respondents engage in "pump and dump" schemes as part of their business model.

Claim pursuant to Fla. Stat. § 517.211(6) (just like this section requires Respondents Misseri, Decker and Legend to pay Mr. Blake's costs, attorneys' fees and prejudgment interest because Legend knowingly employed Misseri and Decker despite the fact that they were not registered in Florida during the relevant time period).[5]

14.    In addition to his attorneys' fees, costs and prejudgment interest, Respondents should be assessed punitive damages due to the egregious nature of Respondents' wrongdoing in this case. This is especially true in light of the horrific regulatory history of Legend, its principals, supervisors (including the branch manager) and associated persons.[6] The amount of punitive damages should be sufficient to punish Respondents and deter them from ever again from choosing greed to line their own pockets with ill-gotten gains by blatantly ignoring their duty to treat their customers in a just, equitable and fair manner.

**Claims and Relief Requested**

Respondents willfully, consciously, and recklessly violated the high standards of commercial honor and just principles of trade to which they are subject. The violations that occurred as a result of Respondent' recommendations, misrepresentations, omissions and other actions described above include the following:

(a)    Failure to treat the Mr. Blake in a just and equitable manner;

(b)    Fraudulent misrepresentations and omissions'

(c)    Breach of fiduciary duty;

(d)    Negligence, gross negligence, negligent misrepresentation and omission, and negligent supervision; and

---

[5] *See* note 3 *supra* and note 7, *infra.*

[6] *See* notes 1, 2 and 4, *supra.*

(e)    Violations of the Florida Securities and Investor Protection Act, Fla. Stat. §517, et seq. (the "Florida Securities & Investor Protection Act").

### Relief Sought

As a result of the conduct set forth above, Mr. Blake requests that the arbitrators issue an Award in his favor and that the arbitrators grant Mr. Blake the following relief:

(a)    Compensatory damages in the amount of $150,000 and prejudgment interest at the statutory rate;

(b)    Rescission damages as calculated under section 517.211, Florida Statutes;

(c)    Costs and such other relief as the Panel deems appropriate;

(d)    Punitive damages in an amount to sufficiently punish Respondents so that they will not again engage in the egregious behavior described above;

(e)    finding liability under the Florida Securities & Investor Protection Act;[7] and

(f)    Such other and additional relief as the Panel may deem just and proper.

Respectfully submitted,

By:    */Neil B. Solomon/*
Neil B. Solomon, Esq.
McLaughlin & Stern, LLP
525 Okeechobee, Suite 1530
West Palm Beach, FL, 33401
Phone: 561-659-4020
Fax: 561-659-4438
Email: nsolomon@mclaughlinstern.com
*Attorney for Claimant*

---

[7] Claimant only requests that the Panel make a finding that Respondents violated sections 517.12(1)(a) and 517.301(1)(a) of the Florida Securities & Investor Protection Act. Claimant does not request the Arbitration Panel award attorneys' fees or costs under section 517.211(6), Florida Statutes. Instead, Claimant reserves his right to make this request directly to a court of competent jurisdiction after the conclusion of the arbitration in accordance with section 682.11, Florida Statutes.

6