UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                                            Chapter 7

    ANTHONY FUSCO                                            Case No. 18-42451-ess
    *aka* ANTHONY JOHN FUSCO,

              Debtor.
-----------------------------------------------------------------x
FRED BLAKE
*aka* FREDERICK BLAKE,


              Plaintiff,                          Adv. Pro. No. 19-01149-ess


    -against-


ANTHONY FUSCO
*aka* ANTHONY JOHN FUSCO,


              Defendant.
-----------------------------------------------------------------x

## MEMORANDUM DECISION ON THE PLAINTIFF'S
## MOTION TO CONFIRM THE ARBITRATION AWARD

*Appearances*:

Steven S. Newburgh, Esq.                    Lawrence R. Gelber, Esq.
McLaughlin & Stern, LLP                     34 Plaza Street East (Suite 1107)
525 Okeechobee Boulevard                    Brooklyn, NY 11238
City Place Office Tower (Suite 1700)            *Attorneys for Defendant*
West Palm Beach, FL 33401                       *Anthony Fusco, aka Anthony John Fusco*


Chester R. Ostrowski, Esq.
McLaughlin & Stern, LLP
260 Madison Avenue
New York, NY 10016
   *Attorneys for Plaintiff*
   *Fred Blake, aka Frederick Blake*


September 3, 2021

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Before the Court is the motion for summary judgment of plaintiff Fred Blake, aka

Frederick Blake.  In his summary judgment motion, Mr. Blake seeks two forms of relief -- an

order to confirm an arbitration award issued by the Financial Industry Regulatory Authority

Office of Dispute Resolution, and separately, a determination that the debt arising from the

arbitration award is non-dischargeable pursuant to Bankruptcy Code Section 523(a)(19).  In this

decision, the Court addresses the first of these matters – that is, whether the arbitration award

should be confirmed.  The defendant Anthony Fusco responds that the motion to confirm the

arbitration award should be denied because, among other reasons, the arbitration award exhibits

a manifest disregard of the law and was tainted by the malfeasance of the arbitration panel.

## Jurisdiction

This Court has jurisdiction over this adversary proceeding pursuant to Judiciary Code

Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as

amended by the Order dated December 5, 2012, of the United States District Court for the

Eastern District of New York.  In addition, this Court may adjudicate these claims to final

judgment to the extent that they are core proceedings pursuant to Judiciary Code Section 157(b),

and to the extent that they are not core proceedings, pursuant to Judiciary Code Section 157(c)

because the parties have stated their consent to this Court entering a final judgment.  July 26,

2021 Hearing Tr. 101:4-9 102:5-16, ECF No. 36.  *See Wellness Int'l Network, Ltd. v. Sharif*, 575

U.S. 665, 671 (2015) (holding that in a non-core proceeding, a bankruptcy court may enter final

orders "with the consent of all the parties to the proceeding" (quoting 28 U.S.C. § 157(c)(2)).

The following are the Court's findings of fact and conclusions of law to the extent
required by Federal Rule of Civil Procedure 52, made applicable here by Bankruptcy Rule 7052.

## Background

### *Mr. Fusco's Bankruptcy Case*

On April 28, 2018, Mr. Fusco filed a petition for relief under Chapter 7 of the Bankruptcy
Code.  On October 5, 2018, Financial Industry Regulatory Authority ("FINRA") claimant Mr.
Blake filed a motion for relief from the automatic stay ("Stay Relief Motion") with respect to the
arbitration pending before the FINRA Office of Dispute Resolution, Arbitration Number 15-
00802, *Frederick Blake v. Legend Securities, Inc., Brian Keith Decker, Daren Dorval, Anthony
Fusco, Frank Fusco, et al.* (the "Arbitration" or "FINRA Arbitration").

From time to time, and on December 10, 2018, the Court held hearings on the Stay Relief
Motion, at which Mr. Blake, by counsel, and Mr. Fusco, *pro se*, appeared and were heard, and
the Court granted the Stay Relief Motion.  On December 20, 2018, the Court entered an order in
Mr. Fusco's bankruptcy case modifying the automatic stay to permit "[t]he FINRA arbitration
proceedings [to] be recommenced any time after fourteen (14) days from the entry of this Order"
and to limit "[t]he relief from the automatic stay . . . to the entry of a final decision and/or award
by FINRA."  Stay Relief Order, *In re Anthony Fusco*, Case No. 18-42451, ECF No. 67, at 2.
And on November 20, 2019, the Court entered an order discharging Mr. Fusco.

### *Selected Procedural History of the FINRA Arbitration*

On April 7, 2015, Mr. Blake commenced an arbitration by filing a Statement of Claim
with FINRA against Mr. Fusco, certain agents of Legend Securities, Inc. ("Legend"), and
Legend.  Motion to Confirm Arbitration Award ("Motion to Confirm"), ECF No. 21, ¶ 1.  In the
Statement of Claim, Mr. Blake alleged that Mr. Fusco and others committed fraud, breach of

fiduciary duty, churning, misrepresentations, non-disclosures, omission of facts, unauthorized

trading, violation of state "blue sky" laws, failure to supervise, negligence, and mark-ups

regarding unauthorized securities transactions performed for him by Legend brokers that were

not registered in Florida.  Motion to Confirm, Exh. B (the "Award") at 2.  Mr. Blake requested

relief in the form of compensatory damages, costs, pre-judgment interest at the statutory rate, and

rescission damages.  And he sought additional relief in the form of an award of punitive damages

and a finding that Mr. Fusco and others were liable under the Florida Securities and Investor

Protection Act.

On June 1, 2015, Mr. Fusco and the other respondents in the FINRA Arbitration filed a

joint Statement of Answer to Statement of Claim, asserting thirteen affirmative defenses and

requesting dismissal of all claims as well as an award of their attorneys' fees and costs.

Declaration of Debtor Anthony John Fusco ("Fusco Decl."), ECF No. 22, ¶ 37; Compl., ECF No.

1, ¶ 1.  On May 13, 2019, Mr. Fusco submitted a hearing brief arguing, among other things, that

he had no connection to Mr. Blake's securities accounts, and did not communicate with him in

any capacity.  Fusco Decl., Exh. Y at 1-2 ("Fusco Hearing Brief").  He also asserted that each

Legend broker that sold a security to Mr. Blake was properly registered in Florida.  Fusco

Hearing Brief at 2.

On June 3, 2019, FINRA held an evidentiary hearing in the Arbitration in Boca Raton,

Florida, at which Mr. Fusco appeared *pro se* and testified on his own behalf.  Award at 1, 6.  At

the conclusion of the hearing, Mr. Blake requested an award of damages in the total amount of

$966,708.15, comprised of $110,622.95 in compensatory damages, $141,073.76 in statutory

interest, $83,890.51 in attorneys' fees, $1,879.15 in costs, and $629,241.78 in punitive damages.

Motion to Confirm ¶ 10.

Just over three weeks later, on June 25, 2019, FINRA issued the Award, finding Mr. Fusco jointly and severally liable with the other respondents for damages in the total amount as requested by Mr. Blake. The Award also imposed joint and several liability on Mr. Fusco and the other respondents for certain additional fees assessed by FINRA, in the total amount of $10,725.00. Motion to Confirm ¶ 12.

In the Award, the Arbitration panel found, "based on clear and convincing evidence," that Mr. Fusco and the other respondents intentionally engaged in misconduct with respect to Mr. Blake's securities accounts and "knowingly participated, condoned, ratified and consented to the conduct of [Legend's] employees, brokers and agents." Award at 4. This misconduct included "excessively trading and churning" accounts, "improperly recording trades as unsolicited" on account statements, "fraudulently misrepresenting or failing to disclose markups and exorbitant commissions," failing to disclose that certain brokers who solicited transactions from Mr. Blake were not registered brokers in Florida, and "failing to follow [Mr. Blake's] instructions including instructions to close his accounts." Award at 4.

Following FINRA's issuance of the Award, and as of the date of this Motion, neither Mr. Fusco nor any of the other respondents has paid any portion of the Award to Mr. Blake.

### *This Adversary Proceeding*

On November 15, 2019, Mr. Blake commenced this adversary proceeding by filing a complaint against Mr. Fusco seeking to confirm the Award entered in the FINRA Arbitration and to determine that Mr. Fusco's debt owed to him is non-dischargeable under Bankruptcy Code Sections 523(a)(2) and 523(a)(19). On January 24, 2020, Mr. Fusco filed an answer to the Complaint. From time to time, and on August 13, 2021, the Court held pre-trial conferences, at which Mr. Blake and Mr. Fusco, each by counsel, appeared and were heard.

On March 4, 2021, Mr. Blake filed a motion for summary judgment seeking, among other relief, confirmation of the Award – this Motion to Confirm – and a determination that the Award is non-dischargeable under Bankruptcy Code Section 523(a)(19).[1]  On March 29, 2021, Mr. Fusco filed a declaration in opposition to the Motion to Confirm.  And on March 30, 2021, Mr. Fusco filed a memorandum of law in opposition to the Motion to Confirm ("Opposition") and a cross-motion to vacate the Award ("Motion to Vacate").  Memorandum of Law in Opposition to Motion to Confirm ("Def's Mem."), ECF No. 26; Motion to Vacate, ECF No. 27.

On April 3, 2021, Mr. Blake filed a reply in further support of the Motion to Confirm.  Plaintiff's Reply ("Plf's Reply"), ECF No. 28.  On April 5, 2021, Mr. Fusco filed a reply in further support of the Motion to Vacate.  ECF No. 29 ("Def's Reply").  On August 2, 2021, Mr. Fusco filed a supplemental declaration in opposition to the Motion to Confirm.  Fusco Supplemental Declaration ("Fusco Supp. Decl."), ECF No. 38.  On August 11, 2021, Mr. Blake filed a supplemental memorandum in support of the Motion to Confirm.  Plaintiff's Supplemental Memorandum of Law ("Plf's Supp. Mem."), ECF No. 39.  On August 11, 2021, Mr. Fusco filed a supplemental reply memorandum in opposition to the Motion.  Defendant's Supplemental Memorandum of Law ("Def's Supp. Mem."), ECF No. 40.

From time to time, and on July 26, 2021, the Court held continued pre-trial conferences and hearings on the Motion to Confirm and the Motion to Vacate, at which Mr. Blake and Mr. Fusco, each by counsel, appeared and were heard, and as set forth on the record of that hearing, the Court denied the Motion to Vacate.  On July 28, 2021, the Court entered an Order denying the Motion to Vacate, "without prejudice to any arguments that may be made in opposition to the

---

[1]  As noted above, this Memorandum Decision addresses only that portion of Mr. Blake's motion that seeks confirmation of the Arbitration Award.  All other relief sought shall be addressed at a later time.

request to confirm the Arbitration Award." Order Scheduling a Continued Hearing on the Motion for Summary Judgment and Denying the Defendant's Motion to Vacate, ECF No. 35 ("Order Denying Motion to Vacate"), at 4.

On August 13, 2021, the Court held a continued hearing on the Motion to Confirm, at which Mr. Blake and Mr. Fusco, each by counsel, appeared and were heard. At the hearing, the Court closed the record and reserved decision.

### *This Motion to Confirm the Arbitration Award*

On March 4, 2021, Mr. Blake filed a motion for summary judgment incorporating this Motion to Confirm seeking, among other relief, confirmation of the Award in the amount of $977,433.15, entry of a conforming final judgment to bear interest at the prevailing statutory rate from the date of the Award, and separately, a determination that the Award is non-dischargeable under Bankruptcy Code Section 523(a)(19).

In support of confirmation of the Award, Mr. Blake argues that the Second Circuit has stated that "[c]onfirmation of an arbitration award is typically 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" Motion to Confirm ¶ 21 (quoting *Dishner v. Zachs*, 2016 WL 7338418, at *1 (S.D.N.Y., Dec. 19, 2016)). He also notes that the Federal Arbitration Act (the "FAA") requires that a "'motion to vacate, modify or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered.'" Motion to Confirm ¶ 23 (quoting *Dishner*, 2016 WL 7338418, at *2). And he argues that pursuant to FAA Section 9, "[t]he prevailing party in an arbitration has one year to move to confirm the arbitration award in his favor." Motion to Confirm ¶ 25.

6

Mr. Blake states that on June 25, 2019, "FINRA issued, publicly filed on FINRA's website, and served the Award" on Mr. Fusco, and that he "did not move to vacate, modify, or correct the Award within three months thereafter."  Motion to Confirm ¶¶ 26-27.  And Mr. Blake argues that "[o]n November 15, 2019, less than one (1) year after the Award was issued and delivered, the Adversary Complaint in this proceeding was filed seeking, in part, confirmation of the Award."  Motion to Confirm ¶ 28.  As a result, and in accordance with the FAA's plain terms, Mr. Blake argues that the Award must be confirmed, and he requests that the Court enter judgment in conformance with the Award.

### _Mr. Fusco's Opposition to the Motion to Confirm the Arbitration Award_

On March 29 and 30, 2021, Mr. Fusco filed a declaration and memorandum in opposition to the Motion to Confirm, and on April 5, 2021, he filed a reply in further support of the Motion to Vacate.  As noted above, on July 27, 2021, the Court entered an order denying the Motion to Vacate, on grounds, among others, that "the Motion to Vacate is untimely."  Order Denying Motion to Vacate at 4.  And the Court also stated that the denial of the Motion to Vacate was "without prejudice to any arguments that may be made in opposition to the request to confirm the Arbitration Award."  Order Denying Motion to Vacate at 4.

And on August 2, 2021, Mr. Fusco filed a supplemental declaration in opposition to the Motion to Confirm, incorporating the March 29, 2021 declaration, the April 5, 2021 reply, and the Opposition.

### _Mr. Fusco's Opposition Memorandum_

In his Opposition Memorandum, Mr. Fusco argues that the Court should deny the Motion to Confirm "under each of the New York Civil Practice Law and Rules Article 75, the Florida Arbitration Act and (if applicable) the Federal Arbitration Act."  Def's Mem. at 4.  He argues

that the Arbitration panel members "failed to afford The Defendant a fair hearing," "failed and refused to hear, much less consider, evidence pertinent to the controversy," and "rendered an Award that exceeded the Panel's authority, in violation of Florida statutes." Def's Mem. at 4. Mr. Fusco also argues that the arbitrators "displayed extreme partiality suggestive of corruption, if not malice, against The Defendant by . . . refusing to hear evidence pertinent to the controversy." Def's Mem. at 4. And he argues that the arbitrators displayed corruption or malice by imposing punitive damages at an unlawful rate, imposing interest for a two-year period when there was no account, "bootstrapping punitive damages by multiplying those two years of interest by 250%" and "imposing thousands of dollars in fees upon Debtor when the events generating those fees were caused by other parties." Def's Mem. at 4.

In addition, Mr. Fusco argues that Mr. Blake's "falsehoods – both major and minor – so deeply permeate his filing at the Arbitration and in this Adversary Proceeding that it would be appropriate for this Court to apply the ancient doctrine of *falsus in uno, falsus in omnibus*." Def's Mem. at 15. Mr. Fusco points to several supposed examples of alleged falsehoods including a mischaracterization of Mr. Fusco as the President and Chief Operating Officer of Legend, a mischaracterization of Mr. Fusco as the owner of Legend, and a mischaracterization of Mr. Fusco's disciplinary record at FINRA. Def's Mem. at 15-17.

Mr. Fusco argues that the Award should not be confirmed because it exhibits a manifest disregard of the law. He argues that "[a]n arbitrator exhibits manifest disregard of the law when (i) 'the governing law alleged to have been ignored by the arbitrator[] was well defined, explicit, and clearly applicable,' and (ii) '[t]he arbitrator appreciate[d] the existence of a clearly governing legal principle but decide[d] to ignore or pay no attention to it.'" Def's Mem. at 26 (quoting *Westerbeke Corp. v. Daihatsu Motor Co. Ltd.*, 304 F.3d 200, 209 (2d Cir. 2002)). He argues that

the arbitrators knew the law, and the Award specifies the law upon which the panel chose to rely. And Mr. Fusco notes that each of the Arbitration panel members confirmed that they had received training to serve as an arbitrator, two of the panel members were lawyers, and one was a businessperson who has served on FINRA arbitration panels since 2003.

Mr. Fusco also argues that the Award was irrational, and shows that the Arbitration panel disregarded the law.  He argues that "[t]he Award was irrational for several reasons, including that it imposed direct liability on Debtor for hands-on conduct like churning [Mr. Blake's] account, when [Mr. Fusco] had zero nexus to [Mr. Blake] or his account."  Def's Mem. at 27. Mr. Fusco also argues that the Arbitration panel disregarded the law of vicarious liability as well as his arguments that the doctrine does not impose liability on him.

And Mr. Fusco argues that under the doctrine of *respondeat superior*, the law of agency, and Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), he should not have been found to be vicariously liable.  He argues that it was irrational for the panel to impose direct liability against him for acts that he did not commit, and that the Arbitration panel's imposition of "presumed vicarious liability" was in manifest disregard of the law.  Def's Mem. at 30.

### *Mr. Blake's Reply in Further Support of the Motion to Confirm*

In his reply in further support of the Motion to Confirm, Mr. Blake argues that Mr. Fusco's filings "reveals a thinly-veiled attempt to relitigate the issues that there previously tried at the FINRA arbitration proceedings which [Mr. Blake] attended, in person."  Plf's Reply ¶ 6. And he argues that Mr. Blake's "Defendant's attempt to "cross motion" and to seek to "vacate" the FINRA award at issue are wholly unresponsive to the arguments presented in the Motion." Plf's Reply ¶ 7.

### *Mr. Fusco's Reply in Further Support of the Motion to Vacate*

In his reply in further support of the Motion to Vacate, Mr. Fusco argues that the Court should not confirm the Award because it was "rendered by the nonfeasance, misfeasance and malfeasance of the Panel."  Def's Reply at 2.  He argues that the Arbitration panel "assessed interest at an unspecified rate for a two year period [during which] there was no nexus between any act or actionable omission of [his]" and Mr. Blake.  Def's Reply at 2.  He asserts that the panel improperly imposed "punitive damages at 569% of the $110,622.95 that it identified as 'compensatory damages' in flagrant violation of Fla. Stat. 768.73."  Def's Reply at 2.  And he argues that the panel "used the two years of interest against an imaginary sum as a fulcrum to leverage punitive damages, essentially multiplying that two-year interest amount by 250% to exacerbate their *prima facie* violation of Fla. Stat. 768.73."  Def's Reply at 2.

### *Mr. Fusco's Supplemental Declaration*

In his Supplemental Declaration, Mr. Fusco argues that the Award should not be confirmed, on several grounds.  He asserts that the arbitration award consisted an "arithmetically impossible interest calculation," an "improper…calculation of punitive damages," allegedly "impossible fact findings in the award," and an "improper" imposition and calculation of adjournment and attorneys' fees.  Fusco Supp. Decl. at 3.  Mr. Fusco also claims that the arbitrators acted in a manner that should be deemed a "manifest violation of the oaths" that each arbitrator took prior to the hearings.  Fusco Supp. Decl. at 3.

Mr. Fusco states that confirmation of the Award should be denied because the arbitrators were "grossly negligent in their arithmetic."  Fusco Supp. Decl. at 2.  He argues that the panel was grossly negligent by imposing an "arithmetically impossible" statutory interest of $141,073.22.  Fusco Supp. Decl. at 2.  Mr. Fusco states that "[t]his failure of basic arithmetic resulted in an Award against me of $966,708.15 against supposed actual damages of

$110,622.95, a multiple of 8.74 times [Mr. Blake's] supposed actual loss." Fusco Supp. Decl. at 2. And he argues that the panel "bootstrap[ed] that grossly negligent arithmetical error to dramatically increase punitive damages and attorneys' fees." Fusco Supp. Decl. at 2. He asserts that "[t]he Panel members, in violation of their arbitral oaths, instead of doing their job to calculate proper interest, simply granted [Mr. Blake's] lawyer's request for an untethered interest figure." Fusco Supp. Decl. at 5.

Mr. Fusco points to several interest rates applicable in Florida from January 2012 to January 2021 and, using the highest interest rate in those years – 6.77% in July 2019 – calculates that even when compounded annually, the total would not have equaled the amount of interest that was proposed by Mr. Blake and accepted by the arbitrators. Fusco Supp. Decl. at 6. Mr. Fusco argues that in "blind[ly]" accepting the calculations made by Mr. Blake, the arbitrators violated "their oath to be impartial." Fusco Supp. Decl. at 7. And he notes that this interest calculation error "rippled into a punitive damages and an attorneys' fee calculation error." Fusco Supp. Decl. at 7. Mr. Fusco further urges that the Arbitration panel imposed interest beginning in 2012, which would have been "two full years" before Mr. Blake "could possibly have lost one penny at Legend." Fusco Supp. Decl. at 6.

Mr. Fusco also argues that the punitive damages were improperly calculated by the Arbitration panel. He notes that the Award distinguishes among compensatory damages, interest, attorneys' fees, and punitive damages. Mr. Fusco argues that the Florida punitive damages "maximizes punitive damages as three times 'compensatory' damages up to a maximum punitive amount of $500,000.00, absent certain other factors inapplicable here." Fusco Supp. Decl. ¶ 22. And he states that by identifying compensatory damages as distinct from interest, attorneys' fees, and costs, the panel should have used only the compensatory

damages figure to determine the amount of punitive damages.  Fusco Supp. Decl. ¶¶ 23-26.

Using this figure, he argues that "the maximum punitive damages figure should have been

$276,557.38, multiplying compensatory damages, $110,622.95, by 2.5."  Fusco Supp. Decl. ¶

27.  And in all events, he asserts, "the actual punitive damages should have been zero, because

there was no evidence presented to justify punitive damages against me personally."  Fusco

Supp. Decl. ¶ 28.

       Mr. Fusco also argues that the Award should not be confirmed because it contains factual

findings that are "impossible."  Fusco Supp. Decl. at 9.  He states that contrary to the Award, he

had no clients and, therefore, had no customer complaints.  He argues that the Arbitration panel's

finding that there was a "disturbing pattern of wrongdoing by Respondent Legend and [Mr.

Fusco]" concerns offenses committed by Legend alone.  Fusco Supp. Decl. ¶ 32 (citing Award at

4).  He argues that this finding "demonstrat[es] that the Panel understood Legend committed

violations separate from those supposedly committed by me, and thus its inclusion of me on the

grounds stated, was not supported by any evidence and in fact was contradicted by the

evidence."  Fusco Supp. Decl. ¶ 33.

       Mr. Fusco also disputes other findings in the Award, such as the grounds for his

expulsion from the securities industry by FINRA.  He asserts that the was not expelled by

FINRA for failing to pay any fine or costs, but rather, that he "agreed to exit the industry, and

FINRA permitted [him] to rely on non-appearance for an 'on the record interview' as a ground to

exit."  Fusco Supp. Decl. ¶¶ 36-37.

       Mr. Fusco also argues that he is not the owner of Legend, and that this is material to the

Panel's conclusions.  He states that Stocktrade, Inc., "a non-SEC, non-FINRA registered

Delaware Corporation," owns 99.8% of Legend and that the other 0.2% is owned by nine other

individuals.  Fusco Supp. Decl. ¶ 42.  He also states that he owns 44.28% of Stocktrade, so that he has a 44.19% indirect ownership interest in Legend – and this, he asserts, incorrectly led to him being held liable as an owner of Legend.  Fusco Supp. Decl. ¶¶ 43-45.  The purpose of this structure, he argues, was "to have separate corporations, with separate books and records, to protect against certain types of potential liability, via the mechanism of the corporate veil."  Fusco Supp. Decl. ¶ 44.

Mr. Fusco argues that he "was held liable, at least in part, expressly by virtue of being an owner of Legend, when I was not."  Fusco Supp. Decl. ¶ 45.  And while he "acknowledge[s] that by virtue of my indirect ownership of Legend and by virtue of my title of CEO (not president, not COO) I could arguably face 'control person' liability, a form of vicarious liability provided by the Securities Exchange Act of 1934," the "demonstrable facts of this case" disprove that liability.  Fusco Supp. Decl. ¶¶ 47-48.

Mr. Fusco also argues that the Arbitration panel members manifestly violated their oaths and demonstrated partiality by refusing to allow him to enter evidence of Mr. Blake's prior "trading patterns," or evidence of "Legend's commission reports showing that the only broker(s) who received commissions for Mr. Blake's transactions were fully and lawfully registered [in] Florida."  Fusco Supp. Decl. ¶ 55.  He argues that the Arbitration panel demonstrated partiality against him by making demonstrably false findings with respect to his disciplinary history and reason for leaving FINRA, and by accepting the impossible calculations requested by Mr. Blake's counsel.  And Mr. Fusco points to the assessment of adjournment and other fees as further evidence of the panel's partiality against him.

And finally, Mr. Fusco argues that the Award should not be confirmed because the attorneys' fees award of $83,890.15, which is "exactly one-third of [$]251,696.71," were

calculated based on an arithmetically impossible interest figure, "without any attempt by the Panel to assess the accuracy of the calculation submitted to it by [Mr. Blake's] counsel."  Fusco Supp. Decl. ¶¶ 70-71.

### *Mr. Blake's Supplemental Memorandum in Support of the Motion to Confirm*

On August 11, 2021, Mr. Blake filed a supplemental memorandum of law in further support of the Motion to Confirm.  He argues that pursuant to FAA Section 9, the Court is required to confirm the Award.  He states that the Court's determination that Mr. Fusco's Motion to Vacate was untimely is dispositive of the question of confirmation as a matter of law, because "a court 'must' grant an order confirming an arbitration award 'unless the award is vacated, modified or corrected as prescribed in [FAA] sections 10 and 11.'"  Plf's Supp. Mem. at 2 (quoting 9 U.S.C. § 9).

Mr. Blake also argues that "[i]t is black-letter law in the Second Circuit that a 'party may not raise a motion to vacate, modify, or correct an arbitration award after the three-month period has run, even when raised as a defense to a motion to confirm.'"  Plf's Supp. Mem. at 2 (quoting *Barclays Cap. Inc. v. Hache*, 2016 WL 3884706, at *2 (S.D.N.Y. July 12, 2016)).  He states that untimely vacatur arguments that are advanced in opposition to a request to confirm an arbitration award are to be disregarded.  And he argues that the Supreme Court's decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008) supports the proposition that an award "must" be confirmed if it is not vacated.  Mr. Blake asserts that because the Court denied the Motion to Vacate in its entirety, any opposition to confirmation should be disregarded and Mr. Fusco's opposition should be barred.

### *Mr. Fusco's Supplemental Reply Memorandum in Opposition to the Motion to Confirm*

On August 11, 2021, Mr. Fusco filed a supplemental reply memorandum of law in further opposition to the Motion to Confirm.  He argues that based on the Court's order modifying the automatic stay to permit the arbitration to proceed, he "understood that this Court retained oversight of the issue of whether the arbitration award should be validated."  Def's Supp. Mem. at 2.  He also argues that the Motion to Confirm is untimely because Mr. Blake's filing of this adversary proceeding does not satisfy the requirement to make a timely motion to confirm the arbitration award.  Mr. Fusco asserts that Mr. Blake was required to file a motion or a petition to confirm the Award, not an adversary proceeding, and that "[i]t was not until far more than a year passed since the entry of the Arbitration Award (as contemplated by the modification of stay Order), that [Mr. Blake] first attempted to comply with 9 U.S.C § 6."  Def's Supp. Mem. at 3.

And finally, Mr. Fusco argues that the Award was procured by fraud.  He argues that the Award is arithmetically impossible and reflects  what Mr. Blake "asked the Panel to impose, basically providing an interest figure at 18% (!) and then bootstrapping from that figure to get to a punitive damage number that exceeds the bounds permitted by statute and jack up the one-third contingency fee awarded."  Def's Supp. Mem. at 4.  For these reasons and others, Mr. Fusco concludes that "the Award was unlawfully procured" and that "this Court should vacate the Award as to him."  Def's Supp. Mem. at 4.

## The Applicable Legal Standards

### *Confirmation of an Arbitration Award*

FAA Section 9 governs the procedure for confirming an arbitration award.  That section provides, in relevant part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award,

and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9.

As the Supreme Court has stated, FAA Section 9 "carries no hint of flexibility." *Hall St. Assocs.*, 522 U.S. at 587.  As the Court explained:

> On application for an order confirming the arbitration award, the court "must grant" the order "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." There is nothing malleable about "must grant," which unequivocally tells courts to grant confirmation in all cases, except when one of the "prescribed" exceptions applies.

*Id.*

To the same effect, the Second Circuit has observed that "confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984).

At the same time, arbitrators are not required to provide an explanation for their decision. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598 (1960). The court must uphold the award so long as there is even "'a barely colorable justification for the outcome reached'" by the arbitrators.  *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 92 (2d Cir. 2008), *rev'd on other grounds*, 559 U.S. 662 (2010)).[2]  And "[t]he arbitrator's

---

[2]  In *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 548 F.3d 85 (2d Cir. 2008), the Second Circuit considered whether to vacate an arbitration panel's decision for manifestly disregarding the law in permitting class arbitration where the arbitration clause was silent on the issue, and held that because Stolt-Nielsen had cited no authority applying a rule of custom and usage against class arbitration, the arbitrators' decision was not in "manifest disregard" of maritime law.  *Stolt-Nielsen S.A.*, 548 F.3d at 101.  It also held that the arbitrators had not manifestly disregarded New York law, because it has no established rule against class arbitration.  *Id.*  On review in the Supreme Court, the Court reversed and held that class arbitration cannot be ordered without evidence that the parties agreed to such a procedure, and that the mere silence of an

rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal citations and quotations omitted).

### Discussion

This Motion to Confirm calls for the Court to consider several matters, in the context of the Arbitration, this adversary proceeding, and Mr. Fusco's Chapter 7 bankruptcy case. These include whether Mr. Blake's request to confirm the Award is timely, and if so, and whether he has, as a threshold matter, shown that the Award should be confirmed. These matters also include whether Mr. Fusco's arguments in opposition to the confirmation of the Award should be considered, and if so, whether he has shown that the Award should not be confirmed. This last question, in particular, calls for the Court to assess arguments that would go to the integrity of the Arbitration here, and whether the asserted egregious defects in the Arbitration such as corruption, fraud, arbitrator misconduct, or manifest disregard for the law have been shown. If so, it is hard to see how the Court's imprimatur should be placed on the Award in the form of an order and judgment confirming the Award. But if not, then it is clear that the Award should be confirmed forthwith.

The Court considers these matters in turn.

### ***Whether Mr. Blake's Request To Confirm the Award Is Untimely***

At the outset, Mr. Fusco argues that Mr. Blake's request to confirm the Award is untimely because, in substance, Mr. Blake proceeded by commencing this adversary proceeding rather than by making a motion within one year after the Award was entered. Mr. Fusco argues

---

arbitration clause on the issue does not satisfy this requirement. *Stolt-Nielsen S.A.*, 559 U.S. at 687.

that the Complaint is insufficient because a party seeking to confirm an arbitration award must do so by a motion or petition, and a complaint is not either of these. And he states:

> [Mr. Blake] failed to timely file a motion or petition to confirm an arbitration award in any court, as required by law. In that failure [Mr. Blake] ran afoul of the proscriptions of (i) [FAA Section 6], (ii) Fed. R. Civ. P. 7(a) and the (iii) holdings of the United States Court of Appeals for the Second Circuit that confirmation MUST be in the form of a motion or petition.

Def's Supp. Mem. at 3. For these reasons, and effectively as a threshold matter, Mr. Fusco argues that the Court should not confirm the Award.

FAA Section 9 states that "any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award." 9 U.S.C. § 9. That is, by its plain terms, the FAA does not require that an application to confirm an arbitration award be in the form of a motion, as opposed to a complaint or an adversary proceeding.

Consistent with this, courts in this circuit routinely treat a complaint as a petition to confirm an arbitration award. *See, e.g., Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384, 387 n.2 (2d Cir. 2011) (stating that "[t]he Appellee has styled its amended petition to confirm and enforce the Award as an amended 'complaint.' As the District Court correctly noted, . . . the Appellee's pleading is more properly termed a 'petition' or 'motion.' . . . We will refer to the Appellee's pleading as a 'petition.'"); *New York City Dist. Council of Carpenters Pension Fund v. Eastern Millenium Const., Inc.*, 2003 WL 22773355, at *1 n.1 (S.D.N.Y. Nov. 21, 2003) (stating that "the Court treats Plaintiff's Complaint as an application for confirmation of arbitration award because that is the primary relief requested in the Complaint"); *Trustees for the Mason Tenders Dist. Council Welfare Fund v. Odessy Constructioncorp*, 2014 WL 3844619, at *1 n.1 (S.D.N.Y. Aug. 1, 2014) (stating that "the Court

treats Plaintiffs' complaint as a petition to confirm an arbitration award because that is the principal form of relief requested in the complaint"); *New York City Dist. Council of Carpenters Pension Fund v. Brookside Contracting Co.*, 2007 WL 3407065, at *1 n.1 (S.D.N.Y. Nov. 14, 2007) (stating that "Petitioners improperly characterize their pleading as a 'Complaint.'  Because Petitioners met the notice requirements and requested the appropriate relief for a petition, the Court will treat it as a petition to confirm an arbitration award"); *Trustees of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Premium Sys.*, 2012 WL 3578849, at *2 n.2 (S.D.N.Y. Aug. 20, 2012) (stating that "[t]he Funds improperly characterize their pleading as a complaint rather than as a petition.  The Court will treat it as a petition to confirm an arbitration award because the Funds met the notice requirements and requested the appropriate relief for a petition"); *Nat'l Hockey League v. Nat'l Hockey League Players' Assoc.*, 2017 WL 1030718, at *6 (S.D.N.Y. Mar. 15, 2017) (explicitly rejecting the argument that "a party challenging an arbitration award must initiate that action by filing a motion to vacate, rather than a complaint"); *N. Am. Thought Combine, Inc. v. Kelly*, 249 F. Supp. 2d 283, 284 n. 1 (S.D.N.Y. 2003) (observing that "[petitioner] filed a 'complaint' seeking to confirm the award . . . .The Court will consider these pleadings as a petition to confirm the award pursuant to [FAA Sections 6 and 9]"); *Trustees of Empire State Carpenters Annuity, Apprenticeship, Lab.-Mgmt. Corp., Pension & Welfare Funds v. AG Const. Corp.*, 2014 WL 3491398, at *1 n.1 (E.D.N.Y. Apr. 28, 2014) (stating that "courts have criticized plaintiff Funds or Trustees for mischaracterizing their pleadings as complaints rather than petitions, the preferred form for confirmation proceedings. . . . Those courts treated the complaints as petitions to confirm arbitration awards because the notice requirements were met and the Funds requested the appropriate relief for a petition").

To be sure, in *Photopaint Technologies, LLC v. Smartlens Corp.*, 335 F.3d 152 (2d Cir. 2003), the Second Circuit stated that "the FAA imposes a one-year statute of limitations on the filing of a motion to confirm an arbitration award under the FAA." *Photopaint Techs., LLC*, 335 F.3d at 158. But this does not change the FAA's straightforward language, and indeed, the Second Circuit's analysis is entirely consistent with the weight of authority recognizing that a complaint meets the FAA's one-year statute of limitations.

In *Photopaint*, the Second Circuit reversed the district court's decision not to confirm an arbitration award on grounds that the petition to confirm the award was untimely, because it had been brought more than one year after the award was issued. The question before the court was not the form of the proceeding that was commenced, but whether a tolling agreement between the parties had the effect of making Photopaint's petition to confirm the award timely – because it was filed more than one year after the award was rendered.

The court looked to the parties' tolling agreement, and found that ""[i]t is undisputed that the period covered by the tolling agreements – the approximately nine months from October 31, 2000 through July 27, 2001 – is long enough to make Photopaint's motion to confirm timely." *Photopaint Techs., LLC*, 335 F.3d at 161. The Second Circuit did not address, and did not need to address, whether a complaint, as opposed to a motion, petition, or some other form of pleading would be sufficient to come within the FAA's one-year statute of limitations. And while the Second Circuit made reference to the filing of a motion, it appears that in that case, a petition – followed by a motion – was filed. *Accord, e.g., Faust v. Fox*, 2005 WL 1863678, at *1 (S.D.N.Y. Aug. 4, 2005) (finding that a timely request to confirm an arbitration award had been made in the Western District of Pennsylvania, and that a subsequent and untimely request to confirm the same award should be dismissed because "a party to the arbitration must apply to a

court with jurisdiction for an order confirming the award within one year of the date upon which the award is made") (citing *Photopaint Techs., LLC*, 335 F.3d at 158-60).

Here, the record shows that Mr. Blake brought the Complaint within one year of the entry of the Award. Specifically, on June 25, 2019, the Award "was publicly filed on FINRA's website and served by FINRA" on Mr. Blake and Mr. Fusco. Motion to Confirm ¶ 11. And on November 15, 2019, Mr. Blake commenced this adversary proceeding by filing the Complaint seeking, among other relief, confirmation of the Award. That is, and indisputably, this "proceeding" Complaint was brought within one year of the issuance of the Award, satisfying the FAA's one-year statute of limitations to apply for an order confirming the award. *See, e.g., Photopaint Techs., LLC*, 335 F.3d at 161; *Faust*, 2005 WL 1863678, at *1.

The record also shows that the Complaint is sufficient as a matter of form to meet the FAA's requirements. This Court agrees with the great weight of authority that has found it appropriate to view a complaint as an adequate form of process, and is not aware of controlling or persuasive authority that reaches a different conclusion. The Complaint provides adequate notice of the request, and seeks the appropriate relief – that is, confirmation of the Award. Accordingly, the Court finds and concludes that Mr. Fusco has not shown that Mr. Blake's request to confirm the Award is untimely. To the same effect, the Court finds and concludes that Mr. Blake has met the one-year statute of limitations as set forth in FAA Section 9 to request confirmation of the Award.

### *Whether Mr. Blake Has Shown that the Arbitration Award Should Be Confirmed*

The FAA requires that a prevailing party must, in substance, satisfy four criteria in order to confirm an arbitration award. First, the prevailing party in the arbitration must establish the existence of an arbitration agreement – otherwise, the FAA simply does not apply. *See* 9 U.S.C.

§ 2.  Second, the prevailing party must establish the existence of a final arbitration award

pursuant to that agreement – because of course, it is the arbitration award that is confirmed.  *See*

9 U.S.C. § 9.  As the Second Circuit has noted, "[a]n arbitration order is final if it resolves all

issues submitted to arbitration, and determines each issue fully so that no further litigation is

necessary to finalize the obligations of the parties."  *Rocket Jewelry Box, Inc. v. Noble Gift*

*Packaging, Inc.*, 157 F.3d 174, 177 (2d Cir. 1998) (internal citations and quotations omitted).

Third, the prevailing party must establish that the parties consent to confirm the

arbitration award in a particular court, or in a court of competent jurisdiction – typically, in the

arbitration agreement itself.  *See* 9 U.S.C. § 9 (stating that "[i]f the parties in their agreement

have agreed that a judgment of the court shall be entered upon the award made pursuant to the

arbitration.").  And finally, the prevailing party must make a timely request to confirm the

arbitration award, within one year of its issuance.  *See* 9 U.S.C. § 9.

Here, the record shows, and the parties do not dispute, that the first criterion, whether an

arbitration award exists,  is met – that is, they entered into an arbitration agreement.  The record

also shows, and the parties do not dispute, that the second criterion, whether an arbitration award

exists, is also satisfied – that is, a final arbitration award was entered.

As to the third criterion, whether the parties have consented to confirm the arbitration

award in a court of competent jurisdiction, here, the record shows that this too is satisfied, as the

parties' arbitration agreement states that the parties "agree that any judgment upon an award

rendered by arbitration may be entered in any court having proper jurisdiction."  Fusco Decl.,

Exh. R ¶ 28 (Customer Agreement).  And the parties agree that this Court has jurisdiction to

confirm the Award, as shown by their consent.  *See* July 26, 2021 Hearing Tr. 101:4-9 102:16.

And finally, here, the record shows that the fourth criterion, whether the prevailing party made a timely request to confirm the arbitration award, is also met because Mr. Blake has met the one-year statute of limitations of FAA Section 9 to request confirmation of the Award by commencing this action on November 15, 2019, less than one year after the Award was filed and served, on June 25, 2019.

This could well be the end of the inquiry – but as courts have recognized, a motion to confirm an arbitration award and a motion to vacate that award can present interrelated issues for consideration, and the arguments advanced in support of one may well constitute the opposition to the other.  As one court noted, "[d]ue to the parallel natures of a motion to vacate and a motion to confirm an arbitration award, denying the former implies granting the latter."  *L'Objet, LLC v. Samy D. Ltd.*, 2011 WL 4528297, at *3 (S.D.N.Y. Sept. 29, 2011).

Here, as noted above, on July 27, 2021, the Court entered an order denying Mr. Fusco's Motion to Vacate, on grounds, among others, that "the Motion to Vacate is untimely."  Order Denying Motion to Vacate at 4.  At the same time, and based on the entire record, the Court stated that the denial of the Motion to Vacate was "without prejudice to any arguments that may be made in opposition to the request to confirm the Arbitration Award."  Order Denying Motion to Vacate at 4.  In light of that determination, the Court now turns to Mr. Fusco's opposition to Mr. Blake's request to confirm the Award, including the threshold question of whether that opposition should be considered at all.

### ***Whether Mr. Fusco's Opposition to the Request To Confirm the Award Should Not Be Considered***

Mr. Blake argues that Mr. Fusco's opposition to the request to confirm the Award should not be considered because Mr. Fusco did not move to vacate, modify, or correct the Award within the three-month statutory period fixed by FAA Section 12 – and therefore, he cannot

oppose the relief sought here. He points to cases that have found that when the time to request to

vacate an arbitration award has passed, arguments in opposition to a motion to confirm an

arbitration award are to be disregarded. And he argues that the Supreme Court's decision in *Hall*

*Street Associates*, among other authorities, requires that an award "must" be confirmed if it is not

vacated. Plf's Supp. Mem. at 3-4.

      Mr. Fusco responds that his arguments against confirmation should be considered

because, among other reasons, in Mr. Blake's customer agreement, the parties consented to the

application of the law of New York, and New York law "permits a motion to vacate in

opposition to a motion to confirm, even beyond the ninety-day window." Def's Mem. at 22.

      As a starting point, the parties' customer agreement, which contains their agreement to

arbitrate, describes the "Governing and Applicable Law" as follows:

> This Agreement and all transactions made in my account shall be governed by the
> laws of the State of new York, (regardless of the choice of law rules thereof)
> except to the extent governed by federal securities law, the Federal Arbitration
> Act, and to the constitution, rules, regulations, customs and usage of the
> exchanges or market (and its clearing house) where executed.

Fusco Decl., Exh. R (Customer Agreement) ¶ 14. That is, the parties' arbitration agreement

provides for the application of New York law – except where the question is "governed by . . .

the [FAA]." *Id.*

      The FAA, in turn, addresses "written provision[s] in any . . . contract evidencing a

transaction involving commerce to settle by arbitration a controversy thereafter arising out of

such contract or transaction," and provides that those provisions "shall be valid, irrevocable, and

enforceable." 9 U.S.C. § 2. And as the Supreme Court has observed, the FAA "supplies not

simply a procedural framework applicable in federal courts; it also calls for the application, in

state as well as federal courts, of federal substantive law regarding arbitration." *Preston v.*

*Ferrer*, 552 U.S. 346, 349 (2008).

In addition, "[t]he Supreme Court has clearly held that the Arbitration Act applies in

federal court to diversity suits which relate to contracts involving interstate or international

commerce." *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 249

(2d Cir. 1991) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402

(1967)).  And here, "[Mr. Blake], a Florida resident, is litigating in New York State against [Mr.

Fusco], a New York resident."  Def's Mem. at 22.

Here, the record shows that the parties' arbitration agreement expressly contemplates that

application of the FAA, in addition to New York law.  It also shows that the parties' dispute was

within the ambit of those disputes described by the FAA, and that diversity of citizenship is

present here.  For all of these reasons, there is considerable merit to Mr. Blake's argument that

Mr. Fusco's opposition to the Motion to Confirm should be viewed as time-barred and should

not be considered.

But here, there are additional considerations to be weighed, including this Court's order

modifying the automatic stay and the fact that, from time to time in his bankruptcy case, Mr.

Fusco has been proceeding *pro se*, as well as this Court's disposition of Mr. Fusco's Motion to

Vacate.  The Court considers each of these matters in turn.

When Mr. Fusco filed his Chapter 7 bankruptcy case, on April 28, 2018, the Arbitration

had not yet taken place and the Award had not been issued.  About six months later, on October

5, 2018, Mr. Blake filed the Stay Relief Motion, seeking to modify the protection of the

automatic stay in Mr. Fusco's bankruptcy case to permit the Arbitration hearing to proceed.

From time to time and on December 10, 2018, Mr. Blake, by counsel, and Mr. Fusco, *pro se*,

appeared and were heard at hearings on the Stay Relief Motion, and on December 20, 2018, the Court entered an order in Mr. Fusco's bankruptcy case modifying the automatic stay to permit "[t]he FINRA arbitration proceedings [to] be recommenced any time after fourteen (14) days from the entry of this Order" and to limit "[t]he relief from the automatic stay . . . to the entry of a final decision and/or award by FINRA." Stay Relief Order at 2.

Mr. Fusco, now represented by counsel, argues, in substance, that he understood the precise terms of the Stay Relief Order to mean that a motion to vacate the Award did not need to be brought within ninety days of the entry of the Award. He argues that "[b]ecause the stay automatically reattached by virtue of the express language of the [Stay Relief] Order, there was no motion to be made. And Debtor understood that this Court retained oversight of the issue of whether the arbitration award should be validated." Def's Supp. Mem. at 2. He points to the provision stating that the stay was modified solely to permit the Arbitration to proceed "to the entry of a final decision and/or award by FINRA," and for these reasons, he asserts, his Motion to Vacate and his arguments in opposition to Mr. Fusco's Motion to Confirm should be deemed to be timely. Def's Supp. Mem. at 1-2.

Another piece of the picture is this Court's resolution of Mr. Fusco's Motion to Vacate. From time to time, and on July 26, 2021, Mr. Fusco and Mr. Blake, each by counsel, appeared and were heard on the Motion to Vacate, and the Court denied the motion, substantially on the grounds that it was untimely. At the same time, based on the entire record, the Court determined that the denial would be without prejudice to Mr. Fusco's arguments in opposition to the Motion to Confirm.

And on July 28, 2021, the Court entered an Order denying the Motion to Vacate. The Court found that "the Motion to Vacate is untimely" under the FAA and the applicable Second

Circuit authority, and ordered that "based on the entire record, including the record of the July 26, 2021 hearing, the Motion to Vacate is denied, without prejudice to any arguments that may be made in opposition to the request to confirm the Arbitration Award."  Order Denying Motion to Vacate at 4.

It is far from clear that Mr. Fusco's interpretation of the Stay Relief Order is supported by the terms of that order, or by the record that led to it.  But it is evident from the record that at the time that the Stay Relief Motion was heard by the Court, Mr. Fusco was representing himself in his bankruptcy case and at the hearings on the motion.  And a self-represented person's interpretation of an order should be viewed in a generous light.  *See, e.g., Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983) (stating that "[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training").

Thereafter, with the benefit of representation by counsel, Mr. Fusco opposed the Motion to Compel and cross-moved to vacate the Award.  As noted in the Court's Order Denying Motion to Vacate, the FAA plainly states that "'[n]otice of a motion to vacate . . . must be served upon the adverse or his attorney within three months after the award is filed or delivered.'"  Order Denying Motion to Vacate at 3 (quoting 9 U.S.C. § 12).  And similarly, as the Second Circuit has held, "'a party may not move to vacate after three months from the time the arbitration panel issued its award.'"  Order Denying Motion to Vacate at 3 (quoting *Florasynth*, 750 F.2d at 177).  As the order also states, the Award was issued on June 25, 2019, and the deadline to move to vacate the Award was on or about September 25, 2019.  And Mr. Fusco filed the Motion to Vacate more six months later, on March 29, 2021.  And for those reasons, the Motion to Vacate was denied.

At the same time, and taking account of the entire record, the Court coupled the denial of Mr. Fusco's untimely Motion to Vacate with the opportunity for his arguments to be considered in opposition to Mr. Blake's Motion to Confirm.  As the order states, "the Motion to Vacate is denied, without prejudice to any arguments that may be made in opposition to the request to confirm the Arbitration Award."  Order Denying Motion to Vacate at 4.

Accordingly, the Court finds and concludes that, under the particular circumstances present here, Mr. Blake has not shown that Mr. Fusco's arguments in opposition to the Motion to Confirm should not be considered.

### ***Whether Mr. Fusco Has Shown that the Award Should Not Be Confirmed***

As a threshold matter, the FAA's standard to defeat the confirmation of an arbitration award is high indeed.  "Federal courts may vacate an arbitration award only in limited circumstances as proscribed by section 10(a) of the [FAA]."  *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d Cir. 1997).

The FAA identifies four grounds to vacate an arbitration award.  FAA Section 10(a) provides that a federal court may vacate an arbitration award on the following grounds:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  And these grounds are not merely illustrative – as the Supreme Court has held, the FAA's enumerated grounds for overturning an arbitration award are exclusive.  "[FAA Sections 10 and 11] respectively provide the FAA's exclusive grounds for expedited vacatur and modification."  *Hall St. Assocs.*, 552 U.S. at 583.

Courts agree that the FAA's standards are not easy to meet.  As the Supreme Court has found, in order to obtain the vacatur of the decision of an arbitral panel under the FAA, a party "must clear a high hurdle."  *Stolt-Nielsen S.A.*, 559 U.S. at 671.  *See Scandinavian Reinsurance Co. v. Saint Paul Fire and Marine Ins. Co.*, 668 F.3d 60, 72 (2d Cir. 2012) (stating that a party seeking to defeat an arbitration award, whether by motion to vacate or opposition to motion to confirm, "must clear a high hurdle"); *STMicroelectronics, N.V. v. Credit Suisse Securities (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011) (observing that "the showing required to avoid confirmation [of an arbitration award] is very high."); *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) (noting the "heavy burden" on the party seeking vacatur under the FAA).

Courts also agree that the role of the court in reviewing an arbitration award is, and should be, quite narrow and precise.  As the Second Circuit observed, "[a] court's review of an arbitration award is [] severely limited, [] so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."  *Scandinavian Reinsurance Co.*, 668 F.3d at 71-72 (citations and quotations omitted).  As the court explained, "strong deference [is] appropriately due arbitral awards and the arbitral process."  *Scandinavian Reinsurance Co.*, 668 F.3d at 72 (citations and quotations omitted).

To the same effect, court review of an arbitration award is not an opportunity for a rehearing on the merits of the parties' claims and defenses.  As a consequence, "[a] motion to vacate filed in a federal court is not an occasion for de novo review of an arbitral award."

*Wallace*, 378 F.3d at 189.  The Second Circuit "has repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process."  *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007) (citation omitted).

Finally, to be sure, a party's disagreement with the arbitrator's "assessment of the evidence and [the arbitrator's] conclusions is not sufficient to vacate an arbitration award." *Polin v. Kellwood Co.*, 103 F. Supp. 2d 238, 262 (S.D.N.Y. 2000), *aff'd*, 34 Fed. App'x 406 (2d Cir. 2002).  And indeed, courts recognize that where none of the FAA's criteria has been satisfied, even an incorrect arbitration award should be confirmed.  As one court noted, "'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, a court's conviction that the arbitrator has committed serious error in resolving the disputed issue does not suffice to overturn his decision.'"  *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011) (quoting *ReliaStar Life Ins. Co. of New York v. EMC Nat'l Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009).

### ***Whether Mr. Fusco Has Shown that the Award Was Procured by Corruption, Fraud, or Undue Means***

FAA Section 10(a)(1) allows a court to vacate an arbitration award where "the award was procured by corruption, fraud, or undue means."  9 U.S.C. § 10(a)(1).  In order to prevail on these grounds, "[a] petitioner . . . must adequately plead that (1) respondent engaged in fraudulent activity; (2) even with the exercise of due diligence, petitioner could not have discovered the fraud prior to the award issuing; and (3) the fraud materially related to an issue in the arbitration."  *Odeon Capital Grp. LLC v. Ackerman*, 864 F.3d 191, 196 (2d Cir. 2017) (citing *Karppinen v. Karl Kiefer Mach. Co.*, 187 F.2d 32, 34-35 (2d Cir. 1951)).

The rationale for this rule is clear from the nature of the conduct that it describes: a court should not countenance demonstrated corruption, fraud, or the use of undue means in a proceeding, including in an arbitration, under any circumstances.  Confidence in judicial process, and confidence in arbitration, would be grossly undermined if that were to occur.

At the same time, invoking these terms is not the same as proving these facts, and allegations that an arbitration was tainted by corruption, or fraud, or undue means should not be made lightly or purely for some perceived strategic advantage.

Mr. Fusco argues that the Award should not be confirmed because the Arbitration panel was "corrupt."  He states that "[h]e was unable to discover, until now, the depth of the Panel's corruption in the way the Award was rendered."  Def's Mem. at 23.  He argues that "the Award, as rendered was completely irrational in that it rested on impossibilities and apparent malice, not to mention violation (at least one step beyond disregard) of Florida's punitive damages statute."  Def's Mem. at 35.  But Mr. Fusco has not come forward with any credible or persuasive evidence, or even the suggestion that such evidence might exist, to show that the Arbitration panel was "corrupt."

Mr. Fusco also argues that Mr. Blake procured the Award using fraud or undue means. In particular, he describes the Award as a "*prima facie* fraud" on grounds, among others, that the Award was the product of "multiple defects, including the arithmetic impossibility" of the Arbitration panel's determination of interest, punitive damages, and attorneys' fees.  Def's Supp. Mem at 4.  And Mr. Fusco asserts that Mr. Blake's material falsehoods were relied upon by the arbitrators when deciding the matter and issuing the Award, and, in effect, that they abandoned their duties and their oaths by simply adopting Mr. Blake's positions as their own.  He argues that "the Award is fatally defective because it reflects an abandonment of the Arbitrators' duty to

calculate sums accurately, blind acceptance of the unjustified and arithmetically incorrect calculations of Plaintiff's counsel and a violation of their oath to be impartial."  Fusco Supp. Decl. ¶ 15.

As examples of this, Mr. Fusco points to language in the Award to the effect that "evidence and testimony (including FINRA BrokerCheck®) revealed a disturbing pattern of wrongdoing by Respondent Legend and A. Fusco."  Def's Mem. at 21 (quoting Award at 4).  He argues that this language in the Award was "cut and pasted" from Mr. Blake's Statement of Claim.  Def's Mem. at 21.  He also argues that the arbitrators relied on the damages calculations prepared by Mr. Blake, and that those calculations are inconsistent with Florida statutory law. Def's Supp. Mem. at 4.

Here, the record shows that Mr. Fusco has not come forward with credible or persuasive evidence, or even the suggestion that such evidence might exist, to show that the Arbitration was tainted by fraud or by the use of undue means.  At most, he has leveled sharp criticism at the arbitrators, asserting that they abandoned their roles and violated their oaths.  And he has noted his disagreement with both the reasoning and the decision set forth in the Award, substantially because it adopts Mr. Blake's view of the facts and awards his requested measure of damages, including compensatory damages, interest, attorneys' fees, costs, and punitive damages.

And finally, even if the asserted shortcomings and defects in process and outcome were somehow sufficient to raise a question as to whether the Award was the product of corruption, fraud, or undue means, Mr. Fusco has not shown, or even suggested, how he was denied an opportunity to present his defense, or unable to discover these matters with the exercise of due diligence before the Award was issued.

Mr. Fusco complains, in substance, that the Arbitration panel adopted the facts as set forth in Mr. Blake's Statement of Claim.  And Mr. Fusco acknowledges that he responded to the Statement of Claim by submitting an answer and a hearing brief to the arbitrators.  *See* Fusco Decl. ¶¶ 37, 49; Exh. M (Answer), Exhibit Y (Hearing Brief).  He also acknowledges that he attended the arbitration proceedings and testified.  Fusco Supp. Decl. ¶ 55.  As the Second Circuit has observed, "the party relying on [alleged perjurious statement] must first show that he could not have discovered [the perjury] during the arbitration, else he should have invoked it as a defense at that time."  *Karppinen*, 187 F.2d at 35.  Failing to persuade the tribunal and losing your case is simply not the same as being the victim of corruption, fraud, or undue means.

Accordingly, the Court finds and concludes that Mr. Fusco has not shown that the Award should not be confirmed pursuant to FAA Section 10(a)(1) on grounds that it was procured by corruption, fraud, or undue means.

### *Whether Mr. Fusco Has Shown that There Was Evident Partiality or Corruption in the Arbitrators*

FAA Section 10(a)(2) allows a court to vacate an arbitration award "where there was evident partiality or corruption in the arbitrators, or either of them."  9 U.S.C. § 10(a)(2).  And the evidentiary standard is high:  "The party challenging the award must prove the existence of evident partiality by clear and convincing evidence."  *Certain Underwriting Members of Lloyds of London v. Fla. Dep't of Fin. Servs.*, 892 F.3d 501, 505 (2d Cir. 2018) (citation omitted).  The Second Circuit has held "that 'evident partiality' . . . will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration."  *Morelite Construction Corp. v. New York City District Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir. 1984).  And there must be "'a showing of something more than the mere "appearance of bias" to vacate an arbitration award.'"  *Certain Underwriting Members of Lloyds of London*, 892 F.3d at

507 (quoting *Morelite*, 748 F.2d at 83).  Courts "will not vacate arbitration awards for evident

partiality when the party opposing the award 'identifies no direct connection between [the

arbitrator] and the outcome of the arbitration.'"  *Certain Underwriting Members of Lloyds of*

*London*, 892 F.3d at 507 (alternation in original) (quoting *Merck & Co., Inc. v. Pericor*

*Therapeutics, Inc.*, 2016 WL 4491441, at *19 (S.D.N.Y. Aug. 24, 2016)).

Courts have identified criteria to be applied in considering whether an arbitration award

is tainted by partiality or bias.  As one court has found, "[i]n evaluating the alleged interest and

bias of an arbitrator, courts examine several factors: '(1) the financial interest the arbitrator has in

the proceeding; (2) the directness of the alleged relationship between the arbitrator and a party to

the arbitration proceeding; (3) and the timing of the relationship with respect to the arbitration

proceeding.'"  *Transportes Coal Sea de Venezuela C.A. v. SMT Shipmanagement & Transp. Ltd.*,

2007 WL 62715, at *4 (S.D.N.Y. Jan. 9, 2007) (quoting *Sanford Home for Adults v. Local 6,*

*IFHP*, 665 F. Supp. 312, 320 (S.D.N.Y. 1985)).

Mr. Fusco argues that the Arbitration panel demonstrated partiality against him in several

ways.  He argues that the Arbitration panel did not give him a fair hearing, did not consider

pertinent evidence, and issued an Award that exceeded its authority.  He also argues that the

Arbitration panel "displayed extreme partiality suggestive of corruption, if not malice, against

[him]" by imposing punitive damages at a rate that violates Florida statutes, imposing interest for

a two-year period when Mr. Blake did not have an account at Legend, "bootstraping" punitive

damages by multiplying the excessive interest by 250 percent, and assessing fees against him

inappropriately.  Def's Mem. at 4.  He also argues that the panel demonstrated partiality against

him through the "demonstrably false findings" regarding his disciplinary history and reasons for

leaving FINRA and by "accepting arithmetically impossible calculations requested by [Mr. Blake's] counsel."  Fusco Supp. Decl. ¶ 56.

And Mr. Fusco argues, in substance, that this partiality and even corruption is clear from the Award itself.  He argues that the Arbitration panel demonstrated partiality by, among other things, its incorrect imposition of fees and calculation of interest and its incorrect imposition of liability on him.

But here again, the record shows that these arguments are not persuasive, for several reasons.  At the outset, here, the record shows that Mr. Fusco has not come forward with credible or persuasive evidence, or even the suggestion of such evidence, to show that the members of the Arbitration panel were tainted by partiality or corruption.  And he certainly has not presented the necessary clear and convincing evidence.  Agreeing with Mr. Blake's positions, adopting Mr. Blake's view of the facts, awarding his requested measure of damages, including compensatory damages, interest, attorneys' fees, costs, and punitive damages, and even adopting language from his submissions, is simply not the same thing as conducting a biased or corrupt hearing, or rendering a biased or corrupt Award.  In effect, Mr. Fusco has made an unsupported attack on the integrity of the Arbitration panel and process because he disagrees with the panel's decision, as set forth in the Award.  It is an understatement to say that these arguments are not persuasive.

And separately, Mr. Fusco has not shown that any of the criteria identified by courts as indicators of "the alleged interest and bias of an arbitrator" are present here.  *Transportes Coal Sea de Venezuela C.A.*, 2007 WL 62715, at *4.  He has not argued or shown that any of the arbitrators had a financial interest in the arbitration proceeding.  Nor has he argued or shown that any of the arbitrators had a relationship with any party to the proceeding, or that any such asserted relationship was close in time to the proceeding.  And separately, he has not argued or

shown that there was a "direct connection between the arbitrator and the outcome of the arbitration." *Certain Underwriting Members of Lloyds of London*, 892 F.3d at 507 (citation omitted).

Accordingly, the Court finds and concludes that Mr. Fusco has not shown that the Award should not be confirmed pursuant to FAA Section 10(a)(2) on grounds that there was evident partiality or corruption in the arbitrators.

### *Whether Mr. Fusco Has Shown that the Arbitrators Were Guilty of Misconduct*

FAA Section 10(a)(3) permits an arbitration award to be vacated "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). "To demonstrate arbitral misconduct, the challenging party must show that his 'right to be heard has been grossly and totally blocked.'" *Oracle Corp. v. Wilson*, 276 F. Supp. 3d 22, 29 (S.D.N.Y. 2017) (quoting *Stifel, Nicolaus & Co. v. Forster*, 2015 WL 509684, at *5 (S.D.N.Y. Feb. 6, 2015)).

But perfection is not the standard. Courts recognize that while "an arbitrator 'must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments,'" the arbitrator is "not required to hear all the evidence proffered by a party." *Tempo Shain Corp.*, 120 F.3d at 20 (quoting *Hoteles Condado Beach, La Concha and Convention Center v. Union de Tronquistas Local 901*, 763 F.2d 34, 39 (1st Cir. 1985). Instead, "'[a]rbitrators must be given discretion to determine whether additional evidence is necessary or would simply prolong the proceedings.'" *Tempo Shain Corp.*, 120 F.3d at 19 (quoting *Catz American Co. v. Pearl Grange Fruit Exch., Inc.*, 292 F. Supp. 549, 553 (S.D.N.Y. 1968)).

The Second Circuit has recognized "that except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." *Tempo Shain Corp.*, 120 F.3d at 19.  In the Second Circuit, moreover, "'manifest disregard of the evidence [is not a] proper ground for vacating an arbitrator's award.'"  *Stolt-Nielsen S.A.*, 548 F.3d at 91 (quoting *Wallace*, 378 F.3d at 193).  "In other words, a panel's erroneous refusal to hear 'pertinent and material' evidence will only provide a basis for vacatur if the decision deprives a party of a fundamentally fair arbitration process."  *In re Arbitration Between Interdigital Comm. Corp. and Samsung Elec. Co.*, 528 F. Supp. 2d 340, 351 (S.D.N.Y. 2007) (citing *Tempo Shain Corp.*, 120 F.3d at 20).

Mr. Fusco argues, in substance, that the Arbitration panel was guilty of misconduct by refusing to hear evidence that was pertinent to the controversy.  Def's Mem. at 11.  He asserts that the arbitration panel "refused to allow me . . . to enter evidence that would have shown (i) that Mr. Blake previously used the identical trading patterns he engaged in at Legend at the brokerage firm from which he transferred his account to Legend and (ii) Legend's commission reports showing that the only broker(s) who received commissions for Mr. Blake's transactions were fully and lawfully registered in Florida."  Fusco Supp. Decl. at 14.

Mr. Fusco also argues that the Arbitration panel refused to consider statements from Mr. Blake's prior brokerage accounts that would show his pattern of trading.  This evidence, he asserts, was "manifestly 'pertinent and material to the controversy'" because, among other reasons, the account statements would have lent support to his argument that Mr. Blake did not have an account at Legend until November 2013, and did not begin to trade at Legend until December 2013.  Def's Mem. at 11-12.  He argues that this is material to the controversy because the Arbitration panel awarded interest for the period "from January 1, 2012, almost two

full years unrelated to Legend or [him]." Def's Mem. at 12.  And he argues that the Arbitration

panel did not allow him to submit evidence to show that the only brokers who received

commissions for Mr. Blake's transactions were registered in Florida.  Fusco Supp. Decl. ¶ 55.

Here, the record shows that Mr. Fusco has not "clear[ed] a high hurdle" to establish that

he was denied a fundamentally fair arbitration process as a consequence of the Arbitration

panel's asserted failure to receive evidence that would show Mr. Blake's prior trading patterns,

or evidence showing that the only brokers to receive commissions on account of Mr. Blake's

transactions were registered in Florida, for several reasons. *Stolt-Nielsen S.A.*, 559 U.S. at 671.

Nor, more generally, has he shown that "his right to be heard has been grossly and totally

blocked.'"  *Oracle Corp.*, 276 F. Supp. 3d at 29 (quoting *Stifel, Nicoulas & Co.*, 2015 WL

509684, at *5).

At the outset, as FINRA Code of Arbitration Rule 13604 provides, "[t]he panel will

decide what evidence to admit.  The panel is not required to follow state or federal rules of

evidence."  As a consequence, the Arbitration panel had the discretion to admit or exclude

evidence as part of the arbitration proceedings.  Mr. Fusco has made plain that he disagrees with

the arbitrators' determinations as to what evidence to hear, but he has not shown that the panel's

determinations led to a materially incomplete – or fundamentally unfair – arbitration process.

In addition, the record shows that Mr. Fusco participated in all aspects of the arbitration

proceeding, including filing an answer and a hearing brief and testifying at the arbitration

hearings.  And it shows that in the context of the Arbitration,  Mr. Fusco argued that the only

broker to receive commissions for Mr. Blake's transactions was registered in Florida.  That is,

these arguments were part of the record before the Arbitration panel, and Mr. Fusco was not

deprived of the opportunity to assert these positions in the proceeding.

As one example, in his Answer, which was signed by counsel, Mr. Fusco avers:

> No broker employed by Legend who was not registered in Florida ever sold a
> security to [Mr.] Blake, and every security sold to [Mr.] Blake by a broker
> employed by Legend was sold to [Mr.] Blake by a properly registered broker.

Fusco Decl. Exh. M (Answer) at 2.  To the same effect, he states that "[t]he only Legend broker

who placed trades or made recommendations for [Mr. Blake] – Respondent Meyer – was duly

registered in Florida and in good standing."  Fusco Decl. Exh. M (Answer) at 13.  So Mr. Fusco

had the opportunity to make this argument in the Arbitration, and did in fact make it.

As another example, in Mr. Fusco's hearing brief, he states that "[a]fter Blake transferred

his high risk positions from Raymond James, E*Trade and National Securities to Legend

Securities, Inc., . . . Legend continued to follow Blake's instructions for Blake's account and

risk."  Fusco Decl., Exh. Y at 1.  That is, here again, Mr. Fusco had the opportunity to make this

argument in the Arbitration, and did in fact make it.

And finally, here, the record shows that Mr. Fusco has not established that the Arbitration

panel's determinations as to what evidence to receive and to exclude rose to the level of

arbitrator misconduct, or even arbitrator mistake.  Nor do they support the conclusion that Mr.

Fusco's "'right to be heard has been grossly and totally blocked.'"  *Oracle Corp.*, 276 F. Supp.

3d at 29 (quoting *Stifel, Nicoulas & Co.*, 2015 WL 509684, at *5).

Accordingly, the Court finds and concludes that Mr. Fusco has not shown that the Award

should not be confirmed pursuant to FAA Section 10(a)(3) on grounds that the arbitrators were

guilty of misconduct.

### ***Whether Mr. Fusco Has Shown that the Arbitrators Exceeded Their Powers or Manifestly Disregarded the Law***

FAA Section 10(a)(4) permits vacatur of an arbitration award "where the arbitrators

exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award

upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). "It is not enough for

petitioners to show that the panel committed an error – or even a serious error." *Stolt-Nielsen*

*S.A.*, 559 U.S. at 671.

The Second Circuit has held that arbitrators have "exceeded their powers" or

"imperfectly executed them" when they exhibit a "manifest disregard of the law." *Stolt-Nielsen*

*S.A.*, 548 F.3d at 94-95. Manifest disregard of the law "clearly means more than error or

misunderstanding with respect to the law." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v.*

*Bobker*, 808 F.2d 930, 933 (2d Cir. 1986). Instead, it requires that "'the arbitrator knew of the

relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed

issue, and nonetheless willfully flouted the governing law by refusing to apply it.'" *Stolt-Nielsen*

*S.A.*, 548 F.3d at 95.

The Second Circuit has similarly found that this doctrine is not to be invoked lightly.

Rather, manifest disregard of the law "is a doctrine of last resort – its use is limited only to those

exceedingly rare instances where some egregious impropriety on the part of the arbitrators is

apparent." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir.

2003). As the Second Circuit has observed:

> An arbitral award may be vacated for manifest disregard of the law only if a
> reviewing court . . . finds both that (1) the arbitrators knew of a governing legal
> principle yet refused to apply it or ignored it altogether, and (2) the law ignored
> by the arbitrators was well defined, explicit, and clearly applicable to the case.

*Wallace*, 378 F. 3d at 189 (citations and quotations omitted).

And a demonstration that an award is incorrect – or even flat wrong – on the law is not

sufficient to meet the standard of FAA Section 10(a)(4). "A federal court cannot vacate an

arbitral award merely because it is convinced that the arbitration panel made the wrong call on

the law. On the contrary, the award 'should be enforced, despite a court's disagreement with it

on the merits, if there is a barely colorable justification for the outcome reached.'" *Wallace*, 378 F.3d at 190 (quoting *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255, 260 (2d Cir. 2003)).

Viewed another way, as the Second Circuit observed, where the "state of the record" shows that "'[w]e cannot say that the law as applied to the facts of this case is so clear and obvious that there was an error that an average person qualified to serve as an arbitrator should have instantaneously perceived and corrected,'" the arbitrators' determination may not be disturbed. *GMS Grp., LLC v. Benderson*, 326 F.3d 75, 83 (2d Cir. 2003) (quoting *Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp*., 103 F.3d 9, 14 (2d Cir. 1997)). And "'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, a court's conviction that the arbitrator has committed serious error in resolving the disputed issue does not suffice to overturn his decision.'" *Jock*, 646 F.3d at 122 (quoting *ReliaStar Life Ins. Co. of New York*, 564 F.3d at 86).

The Second Circuit has similarly made clear that a court should not vacate an arbitration award because of "a simple error in law or a failure by the arbitrators to understand or apply it." *STMicroelectronics*, 648 F.3d at 78 (quoting *Duferco*, 333 F.3d at 389). "Federal courts have confirmed arbitration awards despite apparent miscalculations of awards, ruling that such errors 'do[] not rise to the level of error which is required to vacate [an] award.'" *Dolan v. ARC Mech. Corp.*, 2012 WL 4928908, at *6 (S.D.N.Y. Oct. 17, 2012) (quoting *Companhia de Navegacao Maritima Netumar v. Armada Parcel Serv., Ltd.*, 2000 WL 60200, at *7 (S.D.N.Y. Jan. 25, 2000)) (alteration in original).

And finally, if even a single basis for the arbitrators' determinations is sustained, the award should not be overturned. As the Second Circuit has stated, "'where an arbitral award

contains more than one plausible reading, manifest disregard cannot be found if at least one of the readings yields a legally correct justification for the outcome.'" *STMicroelectronics*, 648 F.3d at 78 (quoting *Duferco*, 333 F.3d at 390).  In addition, as the Second Circuit explained, where the "award does not specify the claim(s) upon which it rests," the party seeking vacatur "must show manifest disregard of the law for all the claims."  *STMicroelectronics*, 648 F.3d at 78.

Mr. Fusco argues, among other things, that the arbitrators exceeded their powers by manifestly disregarding the law.  He argues that they did so by imposing direct liability on him for "for hands-on conduct like churning [Mr. Blake's] account, when [he] had zero nexus to [Mr. Blake] or his account."  Def's Mem. at 27.  He also argues that the arbitrators disregarded the law when calculating the amount of the Award, including in how they calculated statutory interest and based on that interest calculation, punitive damages.

Mr. Fusco also argues that the arbitrators knew the law and, in effect, must have manifestly disregarded it in order to reach the conclusions and assess the damages as set forth in the Award.  He points to their years of experience and training as indicators of their knowledge.  And Mr. Fusco notes that his Answer and Hearing Brief, among other filings, "set forth the law in plain English."  Def's Mem. at 27.

And Mr. Fusco states that Mr. Blake's Statement of Claim sets forth Florida's law of strict liability for unregistered brokers, and that the Award specifies the law upon which the Arbitration panel chose to rely.  He asserts that the law upon which the panel relied was clearly identified and well defined in the Award, including by express reference to specific statutes.  Mr. Fusco points out that he briefed the arbitrators on the laws related to "the three theoretical bases of vicarious liability and clearly explained why the law imposed none of those on him."  Def's

Mem. at 27.  And he concludes that, even in the face of this extensive record, the Arbitration

panel disregarded the law and imposed direct liability against him "for actions that the did not

commit." Def's Mem. at 30.  Instead, he states, the panel's "imposition of presumed vicarious

liability . . . was in manifest disregard of the law, clearly explained and easily understandable by

lawyers on the Panel, one of whom was a law professor." Def's Mem. at 30-31.

Mr. Fusco also challenges the Arbitration panel's assessment of fees against him for

adjournments that, he asserts, were caused by Mr. Blake and even by the arbitrators themselves.

Fusco Decl. at 10-11; Fusco Supp. Decl. ¶¶ 60-72.

In addition, Mr. Fusco argues that the Arbitration panel manifestly disregarded the law in

calculating the Award.  He argues that in the Award, the Arbitration panel impermissibly

imposed interest for a period that begins two years before Mr. Blake even had an account at

Legend.  And Mr. Fusco states that the arbitrators disregarded the applicable Florida statutory

interest rates when calculating that interest.  He also argues that for substantially the same

reasons, the arbitrators disregarded the law in their determination of the punitive damages

component of the Award.  And he asserts that the same error carried over into the panel's

calculation of an attorneys' fee award.  Finally, Mr. Fusco argues that the arbitrators imposed

punitive damages in violation of Florida law by miscalculating those damages.

Here, the record shows that Mr. Fusco's arguments fall far short of the high threshold

necessary to defeat the confirmation of an arbitration award on grounds that the arbitration panel

exceeded their powers by manifestly disregarding the law, for several reasons.

First, Mr. Fusco has not shown that the Arbitration panel acted in manifest disregard of

the law with respect to any – let alone all – of the claims upon which the Award is based.  He

does not persuasively address several of the legal principles upon which liability was grounded,

including breach of fiduciary duty, failure to supervise, negligence, and intentional misconduct. As the Second Circuit has stated, "'where an arbitral award contains more than one plausible reading, manifest disregard cannot be found if at least one of the readings yields a legally correct justification for the outcome.'" *STMicroelectronics*, 648 F.3d at 78 (quoting *Duferco*, 333 F.3d at 390). In addition, as the Second Circuit explained, where the "award does not specify the claim(s) upon which it rests," the party seeking vacatur "must show manifest disregard of the law for all the claims." *STMicroelectronics*, 648 F.3d at 78. That is, in order to defeat confirmation of the Award on these grounds, Mr. Fusco would have to show that the Arbitration panel manifestly disregarded the applicable law for each and every one of the separate grounds for liability that is identified in the Statement of Claim and the Award. And here, he has not persuasively done so, or as to some of the claims, even attempted to do so.

Second, Mr. Fusco has not persuasively identified a "'governing legal principle'" that the arbitrators "'refused to apply'" or "'ignored.'" *Porzig*, 497 F.3d at 139 (quoting *Wallace*, 378 F.3d at 189). In his view, the arbitrators manifestly disregarded the law when they found him directly liable for the actions of Legend's brokers in churning Mr. Blake's accounts, and vicariously liable for the actions of those brokers. And he points to the fact that he addressed the doctrine of *respondeat superior*, agency law, and Securities Exchange Act Section 20(a) in his submissions to the panel, though at the same time he "acknowledge[s] that by virtue of [his] indirect ownership of Legend and by virtue of my title of CEO . . . [he] could arguably face 'control person' liability, a form of vicarious liability provided by the Securities Exchange Act of 1934." Fusco Supp. Decl. ¶ 47.

But disagreeing with the arbitration panel's determination of liability is not the same as showing that a "'governing legal principle'" has been "'ignored.'" *Porzig*, 497 F.3d at 139

(quoting *Wallace*, 378 F.3d at 189).  Even if the law has been applied incorrectly, that would not be grounds to conclude that the applicable law has been manifestly disregarded or a key legal rule has been ignored.  Indeed, even the incorrect application of the law is not a sufficient basis to overturn an arbitration panel's determination.  Here again, as the Second Circuit has explained, "[a] federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law.  On the contrary, the award 'should be enforced, despite a court's disagreement with it on the merits.'" *Wallace*, 378 F.3d at 190 (quoting *Banco de Seguros del Estado* 344 F.3d at 260).

And it is worth noting that "[t]he arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co.*, 462 F.3d at 110 (internal citations and quotations omitted).

Instead, vacatur of an arbitration award on these grounds is appropriate only "when a party clearly demonstrates 'that the [arbitrator] intentionally defied the law.'" *STMicroelectronics, N.V.*, 648 F.3d at 78 (quoting *Duferco*, 333 F.3d at 389).  And here, Mr. Fusco has not shown, or even raised a serious question as to whether, the arbitrators intentionally defied the law.  Rather, he argues, at the most, that the arbitrators were too easily persuaded by Mr. Blake's arguments, and too willing to adopt Mr. Blake's conclusions as their own.  But here again, a party's disagreement with the arbitrator's "assessment of the evidence and [his] conclusions is not sufficient to vacate an arbitration award." *Polin*, 103 F. Supp. 2d at 262 (modification in original).

And separately, here, the record also shows that both as a matter of process and a matter of substance, Mr. Fusco has not shown that the Arbitration panel knew the law, and somehow intentionally disregarded, misconstrued, or misapplied it, for several reasons.

At the outset, the Award sets forth a detailed narrative of the Arbitration process.  In the Award, the Arbitration panel summarized the procedural history of the case, the relief requested, and other issues considered and decided.  The Arbitration panel also noted Mr. Fusco's bankruptcy filing, and this Court's entry of an order modifying the automatic stay, "in which the judge lifted the bankruptcy stay as to [Mr. Blake's] claims against Respondent A. Fusco. Accordingly, Respondent A. Fusco is bound by the determination of the Panel on all issues submitted."  Award at 3.

And significantly, the Award sets forth an explanation for the Arbitration panel's decision.  The Award states, in part:

> Respondents Legend, [Mr. Fusco], Decker, Meyer and Misseri are jointly and severally liable for breach of fiduciary duty, churning, fraud, manipulations, misrepresentations and non-disclosures, omission of facts, unauthorized trading, violation of blue sky laws, failure to supervise, negligence, and markups.
> . . .
> The Panel found, based on clear and convincing evidence, that Respondents Legend, [Mr. Fusco], Decker, Meyer and Misseri engaged in intentional misconduct and/or were grossly negligent in excessively trading and churning Claimant's account; improperly recording trades as unsolicited as opposed to solicited on account statements; fraudulently misrepresenting or failing to disclose markups and exorbitant commissions; failing to disclose that Respondents Misseri and Decker (who solicited and/or recommended many of the transactions which caused Claimant's losses) were not registered brokers in Florida; and failing to follow Claimant's instructions including instructions to close his accounts.
> . . .
> The Panel also found that Respondent Legend and [Mr. Fusco] (President of Legend) knowingly participated, condoned, ratified and consented to the conduct of its employees, brokers and agents

Award at 4.

That is, here, the record shows that there is, at a minimum, a "'a barely colorable justification for the outcome reached'" by the arbitrators. *T.Co Metals, LLC,* 592 F.3d at 339 (quoting *Stolt-Nielsen S.A.*, 548 F.3d at 92). As one example, the record shows that there is a colorable justification for the panel's conclusion that Mr. Fusco is jointly and severally liable for the damages arising from transactions in Mr. Blake's securities account with Legend. While Mr. Fusco was not a broker that serviced Mr. Blake's account directly, he served as Legend's Chief Executive Officer, and even Mr. Fusco acknowledges that he could "arguably face 'control person' liability, a form of vicarious liability provided by the Securities Exchange Act of 1934." Fusco Supp. Decl. ¶ 47. He also acknowledges that he was president and 44.28 percent owner of Stocktrade, and that Stocktrade, in turn, owned 99.8 percent of Legend. *See* Def's Mem. at 5; Fusco Supp. Decl. ¶¶ 42-43. And he acknowledges that he had the "sole obligation in the supervisory or compliance hierarchy, as CEO . . . to insure 'that Legend exercised supervision reasonably designed' to comply with FINRA rules." Def's Mem. at 7 (quoting Fusco Decl., Exh. T).

As another example, the record shows that there is a colorable justification for the panel's determination that Mr. Fusco and Legend did not exercise adequate supervision and were negligent because, among other reasons, the panel found that brokers employed by Legend, Misseri and Decker, were not registered brokers in Florida, and it determined, "based on clear and convincing evidence," that Mr. Fusco intentionally engaged in misconduct with respect to Mr. Blake's securities accounts and "knowingly participated, condoned, ratified and consented to the conduct of [Legend's] employees, brokers and agents." Award at 4.

And here, the record shows that there is a colorable justification for the Arbitration panel's determination that an interest award in the amount of $141,073.76 would be appropriate.

As Mr. Blake argued, the interest calculated is not prejudgment interest as Mr. Fusco asserts – rather, it is the "statutory interest with respect to the consideration that's paid for the security which begins to run on the date the security is purchased pursuant to the Florida Securities Law." Aug. 13, 2021 Hearing Tr. 50:22-25, ECF No. 42.

In support of this argument, Mr. Blake points to Florida Statute Section 517.211, which states that "[e]very sale made in violation of § 517.07 or § 517.12 . . . may be rescinded at the election of the purchaser," and the purchaser may collect "interest on the full amount paid for the security by the purchaser at the legal rate, pursuant to § 55.03, for the period from the date of payment by the purchaser to the date of repayment, less the amount of any income received by the purchaser on the security."  Fla. Stat. § 517.211.  And as Mr. Blake also stated, each one of the purchased securities has an individual interest calculation, which was submitted to the arbitration under seal and not publicly available.  Aug. 13, 2021 Hearing Tr. 53:8-18.

Accordingly, the Court finds and concludes that Mr. Fusco has not shown that the Award should not be confirmed pursuant to FAA Section 10(a)(4) on grounds that the arbitrators exceeded their powers or manifestly disregarded the law.

*               *               *

In sum, this Court finds and concludes that Mr. Blake's request to confirm the Award is timely, and that Mr. Blake has shown that the Award should be confirmed.  The Court also finds and concludes that under the circumstances present here, it is appropriate to consider Mr. Fusco's arguments in opposition to the confirmation of the Award.  And finally, the Court finds and concludes that Mr. Fusco has not shown that the Award should not be confirmed.  In particular, the Court finds that Mr. Blake has not shown that the Award was procured by corruption, fraud, or undue means, or that there was evident partiality or corruption in the Arbitrators, or that the

Arbitrators were guilty of misconduct, or that the Arbitrators exceeded their powers or manifestly disregarded the law in reaching their decision.

<u>**Conclusion**</u>

For the reasons stated herein, and based on the entire record, the Motion to Confirm the Arbitration Award is granted.  Pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9, the Award entered in the arbitration captioned *Frederick Blake v. Legend Securities, Inc., Brian Keith Decker, Daren Dorval, Anthony Fusco, Frank Fusco, et al.*, Arbitration Number 15-00802, is hereby confirmed.

An order and judgment in accordance with this Memorandum Decision shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**September 3, 2021**

**Elizabeth S. Stong**
**United States Bankruptcy Judge**